IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHANNA KATARIINA TARKELA, | |
| Plaintiff, | Case No.: 1:24-cv-01036 |
| v. | Judge Jorge L. Alonso |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", | Magistrate Judge Jeffrey T. Gilbert |
| Defendants. | |

## DECLARATION OF KEITH A. VOGT

I, Keith A. Vogt, declare as follows:

1. I am an attorney at law, duly admitted to practice before the Courts of the State of Illinois and the United States District Court for the Northern District of Illinois. I am one of the attorneys for Plaintiff, JOHANNA KATARIINA TARKELA ("Tarkela" or "Plaintiff"). Except as otherwise expressly stated to the contrary, I have personal knowledge of the following facts and, if called as a witness, I could and would competently testify as follows:

2. According to the U.S. Customers and Border Protection FY2021 report, the total manufacturer's suggested retail price of seized goods was $3.3 billion. U.S. Customs and Border Protection, *Intellectual Property Right Seizure Statistics*, FY 2021 (https://www.cbp.gov/sites/default/files/assets/documents/2022-Sep/202994 - FY 2021 IPR Seizure Statistics BOOK.5 - FINAL %28508%29.pdf), at 28 attached hereto as **Exhibit 1**. The 2021 report noted that nearly 90 percent of all intellectual property seizures occur in the international mail and express environments with the majority of seized goods originating from Asia. *Id*.

3.	A 2017 report commissioned by Business Action to Stop Counterfeiting and Piracy (BASCAP) and the International Trademark Association (INTA) entitled *The Economic Impacts of Counterfeiting and Piracy* included findings that value of counterfeit and pirated products will reach at least $1.90 trillion in 2022. Frontier Economics, *The Economic Impacts of Counterfeiting and Piracy,* 2017 (https://www.inta.org/wp-content/uploads/public-files/perspectives/industry-research/2017_Frontier_Report.pdf). These counterfeit and pirated products will result in a loss of 4.2-5.4 million jobs by 2022. *Id.* A true and correct copy of this report is attached hereto as **Exhibit 2**.

4.	I understand that infringers use a variety of tactics to evade enforcement efforts. Specifically, infringers like Defendants in the present case will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. They also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

5.	Upon information and belief, Defendants faciliate sales designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine or authorized products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards and/or PayPal. The Defendant Internet Stores often include images and design elements that make it difficult for consumers to distinguish such sites from an authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

6.	Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores.

Upon information and belief, Defendants regularly create new websites and/or online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive illegal operation, and to avoid being shut down.

7. There are similarities among the Defendant Internet Stores. For example, many of the Defendant Internet Stores have similar layouts, even though different aliases may be used to register the respective internet stores. Also, unauthorized products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being related to one another, suggesting that the products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

8. Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation despite any enforcement efforts to make them judgment proof. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their accounts to off-shore bank accounts outside the jurisdiction of this Court.

9. For these reasons, in the absence of an *ex parte* Order, Defendants could and likely would modify registration data and content, change hosts, redirect traffic to other websites in their control, and move any assets from accounts in U.S.-based financial institutions, including PayPal accounts, to offshore accounts.

10. Analysis of PayPal and other payment processor transaction logs from previous similar cases indicates that off-shore infringers regularly move funds from U.S.-based accounts to China-based bank accounts outside the jurisdiction of this Court.

11. Past investigation and discovery of online marketplace accounts reveals that Defendants appear to have provided false physical address information to the online platforms in order to avoid full liability. For example, many of Defendants' names and physical addresses used to register the Defendant online marketplace accounts are incomplete, contain randomly typed letters, fail to include cities or states, or use privacy services that conceal this information. Identical contact information among multiple domain names and/or online marketplace accounts also suggests that many of the aliases used to register the Defendant online marketplace accounts are used by the same individual or entity.

12. I have reviewed the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters ("Hague Convention"), to which China is a signatory. The Hague Convention does not preclude service by email, and the declarations to the Hague Convention filed by China do not appear to expressly prohibit email service.

13. Additionally, according to Article 1 of the Hague Convention, the "convention shall not apply where the address of the person to be served with the document is not known." A true and correct copy of the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil and Commercial Matters, and a list of signatory members, are collectively attached hereto as **Exhibit 3**.

14. I have researched whether the issuance of an order to serve process upon the Defendants by electronic mail pursuant to Fed. R. Civ. P. 4(f)(3) is contrary to or likely to offend the law of the People's Republic of China (the "PRC"). I located an English language version of the current Civil Procedure Law of the PRC, which was adopted on April 9, 1991. A true and correct copy of the Civil Procedure Law downloaded from Chinacourt.org, a website sponsored by the Supreme People's Court of the PRC, is attached hereto as **Exhibit 4**. Chapter VII, Section 2, of the Civil Procedure Law governs service of process. I am informed and believe that the law

4

does not preclude the service of process by email and allows for alternate service of process in certain circumstances. For example, Article 84 of the law provides that, if the whereabouts of a recipient of the service is unknown, or if a document cannot be served by the other methods reflected in the law, a document shall be served by public announcement, a method even less likely to reach a defendant than service by email.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 6, 2024.

>     /s/ Keith A. Vogt
>     Keith A. Vogt
>     *Counsel for Plaintiff*